Curia, per JohnstoN, Ch.
The plaintiffs were the sureties of one Thomas Crymes to a note given by him to the late Banister Stone, defendant's intestate, for $2,909, due the 1 Jan. 1837. The note, which was joint and several, was sued on by Stone, and the suits against the plaintiffs were brought in Laurens district, where they resided ; and they, being ignorant of the consideration of the note, and of any just defence to it, /suffered judgments to be taken against them. Crymes, the principal, having died, his administrator was sued in Greenville. This suit was protracted, by the defence of the administrator, until long after the judgments were obtained against the sureties. The de-fence of usury was successfully made out by the administrator, by means of a slip of paper, accidentally discovered among the intestate’s papers, containing calculations in the hand-writing of Stone, the lender : and a judgment was rendered in 1841, for the sum of $2,909, but without interest or costs.
At the same time, Stone recovered another judgment against the administrator of Crymes for $671 87.
*65 The administrator of Crymes made two payments to Stone, amounting, together, to $2,426 51, but was not able to make further payments : — his intestate’s estate being insolvent.
The plaintiffs have paid the further sum of $482 49, upon the larger judgment obtained against Crymes’s administrator, which, with the sums paid by the administrator, will be sufficient to satisfy it, if the latter are exclusively applicable to that judgment. In confirmation of their right to have them thus applied, a letter of Stone to the sheriff of Laurens is relied on, in which, under the date of the 23rd of'May, 1843, he says : “ In the cases, myself against R. Owings, A. Jones, and E. Crymes, as sureties of Thomas Crymes, dec’d, there is a credit due on those judgments of $2,369, dated in August, 1841, and $57 51, in October 1841,^ which I have not been able to have entered on the judgment in ’ Greenville, owing to the manner in which the receipts were j drawn. I will, as soon as I can get them drawn in suitable form, forward them to your office.”
My brother, Johnson, who heard the cause, has sustained the bill fully, by a decree for a perpetual injunction of the judgments against the sureties: and this is an appeal from his decision.
The question is presented, whether the plaintiffs are not concluded by the judgments at law. So far as this point is involved, the case is analogous to that of Cantey vs. Blair, I. Rich. Eq., 41. The plaintiffs allege that they were not privy to the transaction, and were ignorant of the usury. It is said in Cantey vs. Blair, “ That one was ignorant of the fact is not strictly susceptible of proof; but the allegation is made (as that of a fraud having been discovered within four years,) to put the opposite party upon.proof of knowledge.”
The principle is recognized in that case, that mere ignorance is not a sufficient ground for opening a judgment. “ To this must be added, that the party had no means of discovering the fact by exercise of due diligence-; or, if the evidence rested in the knowledge of the plaintiff at law, had no means of knowing that fact, so as to put him upon filing a bill for discovery.”
I suppose that this negative allegation is equally incapable of strict proof with that of ignorance. But when it is made, it is sufficient to throw the burden upon the other party of shewing what reasonable means of inquiry were suggested, by the circumstances, to the party asking relief, ^.nd neglected by him. It does not appear that any such proof was made in this case ; or that *66 the circumstances were either calculated to engender suspicion in the minds of the sureties, or to furnish them with the means of defence, if suspicion had been excited/
Turning to the other point, it is very clear that the plaintiffs are entitled to have the $2,426 51, paid by the administrator of Crymes, placed to their credit, by applying it to the larger judgment obtained against himself.
There is no doubt, if no directions are given by the party making the payment, the right to make the application is with the party receiving. If neither party has fixed the application, it devolves upon the court, and will be made, pro rata, to the demands held by him who receives the money against him who paid it: or, if one of the demands be less secured than the others, the application will be made to it, in the first instance. 5 Mason, 82; 4 J. J. Marsh. 97; 9 Cowen, 420.
But here, the letter of Stone shews his application, which concludes his administrator, and may, also, be taken as evidence of directions given by the administrator of Crymes, when he paid the money.
To the $2,426 51, paid by the administrator of Crymes, the plaintiffs have added a sum sufficient to satisfy the larger judgment against him ; and, to the extent of all these payments, they are entitled to credit upon the judgments obtained against themselves.
But the decree goes beyond this, and proceeds upon the principle, that the satisfaction of the judgment against the principal is a satisfaction of the judgments against the sureties ; and I should have no doubt of the correctness of this, if the judgments were identical in amount. But the judgment against the principal .excludes costs and interest, whereas those against the sureties include them both.
The principal was excused from the interest and costs by his defence under the Acts of 1831 and 1832. The sureties made no such defence; and, therefore, suffered a recovery as in other cases.
This recovery is conclusive upon them at law; and, when they come to be relieved in equity, relief will be granted only upon the terms which equity requires ; to wit, upon the payment of the sum really loaned, with lawful interest. Some of the authorities for this rule are mentioned in Pickett vs. Pickett, 2 Hill Ch, 470; and the rule is so unquestionable, that it is unnecessary to support it here by reference to cases.
*67 No doubt, the plaintiffs are entitled to relief on the ground of accident: but no exception can be found to the proposition, that wherever one party, by whatever accident, has obtaiued a right or advantage at law, equity will not deprive him of what the laxo has given him, but upon condition that the other party shall do what equity requires.
The decree has been justified upon the ground that the plaintiffs may be consideréd as entitled to open the judgment, and make such defence as they could have made, if they had been cognizant of the usury: and that, if a new trial were ordered, the judgment at law would be rendered only for the principal sum: wherefore, it is insisted, that the decree is correct in re* stricting the lender to that sum. But I apprehend this is a misconception. If the court had the power to grant a new trial for the purpose of letting in the defence which might have been made, it would exercise that power only upon equitable terms: and, in a case of usury, its constant maxim is, that it will not interfere or giant any relief, but upon a submission to pay what is really due, with lawful interest.
Before the Acts of 1831-2, the usurious borrower- could, at law, have deprived the lender- of every cent loaned to him. Was it ever heard, that, under that state of the law, a party, who was accidentally deprived of an opportunity to make the defence of usury, was helped by this court to a decree so sweeping as that 7 No. But how does the decree, we are asked to give here, differ, in principle, though it may differ, in degree, from the one I have supposed ?
It has been intimated that, since the Acts of 1831-2, equity should require the payment only of the principal sum loaned : but I. cannot perceive any ground for this opinion. If it results from the supposition, that we are bound to conform to the obligation at law, the answer is, that equity never did take that for its guide. As the law stood before these Acts, the whole loan was forfeited at law ; and, if equity had conformed to it, she would have relieved from the whole debt. The Acts, I have mentioned, have declared the borrower liable at law for the principal sum loaned ; and it would be extraordinary that an increase of the liability at law should be made the ground of diminishing the liability in equity.
It results, from these observations, that the sureties will have to pay a greater sum than was recovered against their principal. But there is no injustice in the principle of such a decision. It *68 happens they will sustain loss from the insolvency of him, who is bound to indemnify them. If their principal were solvent, they would be entitled to recover whatever they may be obliged to pay on his account. If they had given him, or his administrator, notice when they were sued, the judgments obtained against them would have been conclusive, in an action for reimbursement. As they did not, the only difference is, that they would be obliged to make out their case.
It is ordered, that the decree be modified, by declaring the plaintiffs entitled to credit, on the judgments against them, for the two payments made by the administrator of Crymes, as well as for the payment made by themselves; and that they are liable for the sum really loaned, with lawful interest thereon, to bo ascertained by the commissioner, to whom the accounts are hereby referred.
Harper and Donkin, CC. concurred.